543 So.2d 1244 (1989)
Aubrey Dennis ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 74092.
Supreme Court of Florida.
May 3, 1989.
*1245 Larry Helm Spalding, Capital Collateral Representative and Billy H. Nolas, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Aubrey Dennis Adams, a state prisoner under sentence and warrant of death, moves this Court for a stay of execution and appeals a circuit court order that refused to vacate the judgment and sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Adams was convicted in 1978 of the murder of an eight-year-old girl. The judgment and sentence of death were affirmed in Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982). In our opinion we pointed out that Adams described how the crime was committed.
In his written statements, the defendant stated that he saw the victim walking home from school about a block and a half from her house and offered to give her a ride home. She got in the car and defendant drove away with her. The defendant remembered "being stopped somewhere and she was screaming and I put my hand over her mouth", and she quit breathing. In his oral statement the defendant said he had removed the clothes from the victim and used some cord which he carried in his car to tie her up so that she would fit into plastic bags. He also said that he tried to have sexual relations with her, but couldn't bring himself to do it. He denied having sexual relations with her.
Id. at 851. When a death warrant was signed in 1984, Adams filed a motion to vacate judgment and sentence in the trial court. This motion was denied, and this Court affirmed. Adams v. State, 456 So.2d 888 (Fla. 1984). Adams petitioned the United States District Court for a writ of habeas corpus. The petition was denied. The Eleventh Circuit Court of Appeals stayed the execution but ultimately denied relief. Adams v. Wainwright, 764 F.2d 1356 *1246 (11th Cir.1985), cert. denied, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).
A second death warrant was signed in February 1986. Adams' petition for a writ of habeas corpus was denied. Adams v. Wainwright, 484 So.2d 1211 (Fla. 1986). A few days after the United States Supreme Court denied Adams' petition for a stay of execution, Adams v. Wainwright, 475 U.S. 1041, 106 S.Ct. 1254, 89 L.Ed.2d 362 (1986), Adams again moved the trial court to vacate the judgment and sentence. Again the trial court denied relief and again this Court affirmed. Adams v. State, 484 So.2d 1216 (Fla.), cert. denied, 475 U.S. 1103, 106 S.Ct. 1506, 89 L.Ed.2d 906 (1986). Adams then petitioned the United States District Court for habeas corpus, and again was denied, but the Eleventh Circuit Court of Appeals granted a stay and eventually granted relief. Adams v. Wainwright, 804 F.2d 1526 (11th Cir.1986), modified on denial of rehearing, 816 F.2d 1493 (11th Cir.1987). However, the Supreme Court of the United States reversed the judgment of the court of appeals. Dugger v. Adams, ___ U.S. ___, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989).
Thereafter, a fourth[1] death warrant was signed. Adams again moved the trial court to vacate judgment and sentence and to stay the execution. The trial court denied the motion without an evidentiary hearing. Adams filed his notice of appeal to this Court on April 28, 1989, and filed a motion to stay execution on May 1, 1989. Because Adams' execution was scheduled for May 2, 1989, we stayed the execution for forty-eight hours in order to give the matter proper consideration.
Adams raises four points in his motion for postconviction relief. He first contends that he is entitled to a new sentencing proceeding under the rationale of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), which held that the judge and jury must not be led to believe that nonstatutory mitigating evidence cannot be considered in capital sentencing. Adams asserts that at his original sentencing proceeding which was held on October 12, 1978, his counsel felt constrained in their ability to introduce nonstatutory mitigating evidence.[2] He alleges that had counsel not been so constrained, they would have been in a position to introduce further nonstatutory mitigating evidence bearing on his mental condition.
In denying this claim, the trial court first ruled that the claim was procedurally barred by the provisions of Florida Rule of Criminal Procedure 3.850. This rule provides that all motions for postconviction relief should be filed within two years after the judgment and sentence become final unless
it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.
This Court has previously held that the holding of the United States Supreme Court in Hitchcock constituted a significant change in the law as to permit contentions based upon its rationale to be raised more than two years after defendant's judgment and sentence became final. Hall v. State, 541 So.2d 1125 (Fla. 1989). The state, however, points out that the United States Supreme Court issued its opinion in Hitchcock on April 22, 1987, and Adams' motion for postconviction relief was filed *1247 on April 26, 1989, which was more than two years after the "change of law" announced by the United States Supreme Court. The state argues, with some logic, that the rule should be construed to mean that a defendant must raise any contentions based upon new facts or a significant change in the law within two years of the time such facts become known or such change was announced. This interpretation of the rule is consistent with its purpose to require a timely adjudication of legitimate claims, and we hereby adopt it for all motions filed after June 30, 1989. However, because the rule does not specifically state that motions for postconviction relief based upon changes in the law must be made within two years from the date of such change, we are unwilling to penalize Adams for failing to make his motion within the two-year period.[3] Hence, we will address his contention on the merits.
Unlike a number of cases recently before this Court, this case does not present a pure Hitchcock claim in which either (1) efforts to introduce nonstatutory mitigating evidence were thwarted or (2) both the judge and the jury were under the impression that nonstatutory mitigating evidence could not be considered. Here, Adams did, in fact, introduce without objection some nonstatutory mitigating evidence at his trial, including testimony by his mother concerning the emotional problems that he had as a child because of being large for his age and some learning problems that he had in school. Reverend Smith also testified that as Adams grew up, other children ridiculed him because of his size. Reverend Smith further said that Adams had a loving relationship with his father and mother, never got into any trouble, and attended church regularly. Others testified that he had been a reliable worker as a correctional officer and one witness even characterized him as happy-go-lucky.
At the time of Adams' original sentencing proceedings, the standard jury instructions included a charge which had the effect of limiting the jury's consideration to the statutory aggravating and mitigating circumstances. However, defense counsel in this case requested a special instruction which would explain that the jury was not limited to consideration of the statutory mitigating circumstances. Apparently, the trial judge at first indicated that he would not give the requested instruction. Following the prosecutor's closing argument, however, he then made the following observation:
THE COURT: All right. For the record, now, Mr. Oldham, I've changed my mind. I'm going to give the Defendant's special requested Jury Instruction Number Two, and the reason I'm doing that is that in your closing argument you made reference to, that the only mitigating circumstances they can give reference to, and you listed them. I do not believe that this is the law in this State. The instructions say you may consider  so, just to be completely fair to the Defendant, I have changed my mind and for the record purposes I'm going to give the Penalty Number Two. Do you object?
MR. OLDHAM: I have no objection, your Honor.
As a consequence, after outlining the statutory aggravating and mitigating circumstances to be considered, the court further instructed the jury:
The aggravating circumstances which you may consider are limited to those upon which I've just instructed you. However, there is no such limitation upon the mitigating factors you may consider.
While disclaiming any independent recollection, after studying the record of the trial, the judge at the hearing on the current motion stated:
I believe that it was a correct instruction at that time, at least it was the best instruction that I had before me with the defense counsel not even asking some other instruction to be given, when I said the aggravating circumstances which you may consider are limited with those from which I have instructed you; however, *1248 there is no such limitations upon mitigating factors that you may consider.
That instruction was given by me to specifically clear up any doubts in any juror's mind that they may have had specifically, telling them that they were not limited to statutory limitations in this considering mitigating circumstances.
I was the sentencing judge in this case, and I considered all of the evidence, of all mitigating circumstances, everything that was contained in the case as I sat there and listened to it, all of the psychiatric descriptions that were given, the PSI  and I want to talk about the PSI in just a few minutes, and everything both mitigating  both statutory and nonstatutory, because I was of the opinion, as I have said, that the law was rapidly changing.
In view of the instruction which was given, we are convinced that the jury was not misled concerning its ability to consider nonstatutory mitigating circumstances, and it is evident that the trial judge knew that such circumstances could be considered. The remaining question is whether the constraints allegedly felt by Adams' trial counsel provide a legal basis to order a resentencing.
At the first trial, defense counsel had Adams examined by a psychiatrist, Dr. Sullwold. During the sentencing proceeding, Dr. Sullwold testified that while Adams was not insane, he was in a state of severe emotional distress at the time of the murder, primarily because of his deteriorating marriage.[4] Adams now submits an affidavit of Dr. Sullwold which states that if he had been asked by defense counsel, he could have also testified that Adams suffered from emotional stress throughout most of his life. Adams also submits the report of an examination by a psychiatrist, Dr. Koson, who examined Adams in 1986. Dr. Koson discusses incidents of emotional turmoil in Adams' life and with respect to mitigation concludes that there were many nonstatutory mental health factors available in Adams' case. Adams was reexamined by Dr. Toomer, a psychologist, on April 24, 1989. Dr. Toomer says that the results of his psychological testing indicate that Adams has brain damage which causes him to be more susceptible to the emotional stress which he has suffered during his lifetime. Finally, Adams submits the affidavits of many friends and relatives which recount in more detail the emotional stress suffered by Adams during his childhood and the anxiety he later experienced because of his wife's infidelity.
None of this provides a basis for resentencing. In the first place, the trial judge permitted the defense to put on any evidence it wished in the sentencing proceeding, and there is nothing to indicate that the judge would not have permitted testimony by Dr. Sullwold concerning Adams' previous emotional stress. There is also no reason to believe that the trial judge would have precluded counsel from putting on friends and relatives to further describe the emotional problems about which Adams' mother and Reverend Smith had already testified. Significantly, in the 1986 motion that was denied in Adams v. State, 484 So.2d 1216 (Fla. 1986), Adams alleged that his counsel was ineffective for failing to develop further mitigating evidence concerning his mental condition and attached to the motion the same affidavits of the friends and relatives as well as that of Dr. Koson that are attached to his current motion. Thus, it appears that the contention that counsel felt constrained from introducing this evidence and that a new sentencing proceeding should now be held pursuant to Hitchcock amounts to little more than a successive attempt to reassert a claim of ineffectiveness of counsel.[5] Moreover, we are convinced beyond a reasonable doubt that additional evidence concerning Adams' history of emotional stress would not have *1249 changed the jury's recommendation or the trial judge's sentence of death for the brutal killing of an eight-year-old child. Hence, we conclude that Adams is entitled to no relief on this claim.
Adams' second claim is that the penalty phase jury instructions had the effect of shifting the burden to him to prove that death was inappropriate. This claim is procedurally barred because (1) no objection to the instruction was made at the trial; (2) the point was not raised on direct appeal; (3) it was raised in Adams' first motion for postconviction relief in the context of an ineffective assistance of counsel claim and rejected by this Court; and (4) even if it is not considered a successive claim, it is now barred by reason of the two-year time period in rule 3.850. Moreover, the Eleventh Circuit Court of Appeals has held that the instructions given on this subject in Adams' case were correct. Adams v. Wainwright, 764 F.2d 1356, 1369 (11th Cir.1985).
Adams' next claim asserts that the sentence of death, resting in part on the finding of the aggravating circumstance of "heinous, atrocious, and cruel," is invalid in light of the United States Supreme Court's ruling in Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). This claim is procedurally barred because of not having been raised on direct appeal or in his previous motions for postconviction relief. Harich v. State, 542 So.2d 980 (Fla. 1989); Atkins v. State, 541 So.2d 1165, 1166 n. 1 (Fla. 1989); Hall v. State, 541 So.2d 1125, 1126 n. 1 (Fla. 1989).
Adams' last claim is grounded on the premise that there was an impermissible reliance upon victim impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). This claim is procedurally barred because there was no objection raised at the trial or on direct appeal. Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
Accordingly, we affirm the denial of Adams' motion for postconviction relief. We decline to extend the stay of execution beyond the forty-eight-hour period set forth in our previous order. No petition for rehearing will be permitted.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
McDONALD, J., concurs with an opinion.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
McDONALD, Judge, concurring.
I agree with the resolution of the legal issues as expressed by the majority. On the original appeal, and the first application for postconviction relief, I expressed my view that Adams should not be committed to death for his crimes. I still feel that way and, were I the Governor, I would never have signed a death warrant on Adams. This Court, however, has settled the issue of life or death for Adams. Because of that and because I am in agreement that the latest petition of Adams affords no basis for relief, I join the majority opinion.
BARKETT, Judge, dissenting.
In this case when the defendant asked that the jury be instructed that they could consider the nonstatutory mitigating evidence presented, the trial court declined to do so. The prosecutor was then permitted at closing argument to make erroneous statements restricting the jury to the list of mitigating factors contained in the Florida death penalty statute prior to Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). After this argument, the judge decided to tell the jury that they were "not limited" in considering mitigating factors, without, however, indicating what mitigating factors could be considered. The jury was told only that the mitigating factors were not limited in the same way as the aggravating factors. They were not told that the law required them to consider any mitigating factor relevant to the defendant's life and character or the circumstances of the offense, as required by Lockett. In light of the erroneous *1250 comments of the prosecutor, I cannot regard the trial judge's vague instruction as curing the error. For this reason, I conclude that the death penalty was not reliably imposed and that resentencing is required under Hitchcock.
KOGAN, J., concurs.
NOTES
[1] There were two death warrants signed in 1986. The governor granted a stay of one warrant in order that Adams be evaluated for his competency to be executed. After Adams was found competent, another warrant was signed. See Adams v. Wainwright, 484 So.2d 580 (Fla.), cert. denied, 475 U.S. 1104, 106 S.Ct. 1506, 89 L.Ed.2d 907 (1986).
[2] Adams submitted the affidavits of two of his counsel to support these allegations. Lead trial counsel for Adams at sentencing later filed an affidavit disclaiming the allegation that he was constrained in putting on mitigating evidence. Because this latter affidavit was contested, the trial judge stated that he would not consider it in his deliberations. Therefore, this Court will also not consider the third affidavit for purposes of this appeal.
[3] We have delayed the application of this interpretation of the rule until July 1, 1989, in order not to penalize other defendants who might be in the same position as Adams.
[4] In his sentencing order, the trial judge found the mitigating circumstance that the crime was committed while Adams was under the influence of extreme mental or emotional disturbance.
[5] Dr. Toomer's report is new, but it is based upon an examination conducted more than ten years after the fact. There is no suggestion that he was available at the trial or that his testimony would have been precluded if he had been.